IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA P. BRAITHWAITE,

                Plaintiff,             OPINION AND ORDER

    v.

                                                   21-cv-425-wmc

SGT. MUTIVA, CO HOHN, CO BIRD, CO CASTEL, CO BROWN, SGT. EAGLEBERGER, SGT. JONES, CAPT. LEFFLER, CO DUVE, CO MANN, CO STRONG, LT. BRESEE, CO REYNOLD, DR. HOEM, LT. SCULLION, CO WEBSTER, CO PAYNE, CAPT. COLLINS, CO HAGENSICK, CO WIEGGL, SGT. MELLEN, MS. BROWN, MR. KARTMAN, WARDEN, DEPUTY WARDEN, CO FISHNICK, MR. BROADBENT, SGT. WALDERA, SGT. WINGER, PSU MINK, SGT. OSWALD, CO SALMON, CO MARTIN, CO SCHNEIDER, CAPT. TOM, PSU LEMIEUX, CAPT BRINKMAN, DR. SCHWEEN, LT. FISCHER, SGT. LAPROL, SGT. TIERNEY, CAPT. BOISEN, CO PARIS, CO WUKISON, ICE EXAMINER E. RAY, ICE EXAMINER W. BROWN, ICE EXAMINER J. PAYNE, LT. TAYLOR, CAPT. ESSER, CO JONES, CO WEADGE, SGT. KNOEKEL, CAPT. HULCE, CO EVANS, SGT. ZIMMER, CO COLIN, SGT. MILLER, NURSE WEHRLE, NURSE SUPERVISOR KINYON, NURSE SUPERVISOR ADAMS, NURSE ZENZ, NURSE RODGERS, NURSE DOLL, CO SCHISSEL, CO FRIMBLER and CO GOVIER,

                Defendants.

---

*Pro se* plaintiff Joshua Braithwaite, who currently is incarcerated at the Wisconsin Secure Program Facility ("WSPF"), filed this lawsuit under 42 U.S.C. § 1983, against *66* proposed defendants, a combination of WSPF and Wisconsin Department of Corrections ("DOC") employees. Braithwaite claims that defendants have violated his constitutional and state law rights in mishandling his self-harming behaviors, ignoring his mental health

needs and then retaliating against him for complaining about those failures by issuing him conduct reports, confiscating his property, restricting his access to hygiene items and subjecting him to inhumane conditions of confinement. Braithwaite's amended complaint is ready for screening under 28 U.S.C. §§ 1915(e)(2), 1915A, and Braithwaite further asks that the court ensure that certain video footage is preserved (dkt. ##8, 10). While many of Braithwaite's allegations appear to be tied to his ability to repeatedly self-harm and the repercussions of his complaints, a number of the defendants and multiple claims do not involve self-harm or retaliation. Accordingly, the court concludes that Braithwaite's amended complaint violates Federal Rules of Civil Procedure 20, and severance is appropriate under Federal Rule of Civil Procedure 21. Therefore, to proceed in this lawsuit, Braithwaite must identify the *one* lawsuit upon which he wishes to proceed under this case number.

OPINION

Under Federal Rule of Civil Procedure 20, plaintiffs may join their claims together in one lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Yet, as the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). If a complaint includes unrelated claims against different defendants in violation of Rule 20, a court may order that the lawsuit be severed. *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011); *In re High Fructose Corn Syrup Antitrust Litig.*, 361

F.3d 439, 441 (7th Cir. 2004); *Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991). Even when claims are related, the court has authority under Federal Rule of Civil Procedure 21 to sever a lawsuit when it would be unwieldy to permit a plaintiff to bring multiple claims against many different defendants in a single case. *Lee*, 635 F.3d at 971 (pursuant to Rule 21, court may sever claims when differences between claims predominate over common questions); *see also UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("[The federal] rules are broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes.").

Braithwaite's claims appear to arise from two periods of time: events that occurred in September of 2019, and then from December of 2020 through at least March of 2021. As for the series of events Braithwaite outlines between December of 2020 and March of 2021, Braithwaite's claims arise from events that do not appear related, or if related, the relationship appears thin at best. For example, the majority of Braithwaite's claims from that time are that he was punished or subjected to certain conditions of confinement in retaliation for complaining about his self-harm, but in many instances, he has not actually identified the protected conduct that was the subject of retaliation. Moreover, Braithwaite includes vague and undeveloped allegations that certain defendants failed to provide him an inhaler on one occasion in February of 2021. Even grouping Braithwaite's self-harm and related retaliation claims together, his allegations can be divided into at least 6 different lawsuits:

**Lawsuit 1:** Braithwaite claims that on September 16, 2019, he threatened to cut himself with a razor, and that defendants Sergeant Laprol and Unit Manager Broadbent mishandled that threat. Braithwaite further claims that defendants Eagleberger, Oswald, and Bird were subsequently aware he was using a razor blade to cut himself and did nothing despite their knowledge.

3

**Lawsuit 2:**  Braithwaite claims that between December 28, 2020, and January 1, 2021, he repeatedly seriously harmed himself with razor blades, requiring several stiches. Braithwaite alleges that the following defendants were able to stop him from self-harm and failed to do so:  Leffler, Jones, Fishnick, Dr. Hoem, Mann, Bresee, Scullion, Payne, Castel, Hagensick, Reynold, Wieggl, Webster, Strong, Wilkinson, Mutiva, Waldera, Taylor, Govier, Mellen, Fischer, Hohn, CO Brown, Schissel and Unit Manager Ms. Brown.

Braithwaite relatedly claims that his psychologist promised he would not be punished for the events related to his self-harm in exchange for him turning over a razor blade, but defendant Kartman still punished him, keeping him in segregation after these incidents for seven days longer than he would have received had he been punished for that conduct.  He also claims that defendant Tierney retaliated against him by issuing him a conduct report related to his self-harming.

Braithwaite subsequently was placed in isolation, where psychological services unit ("PSU") staff and unit staff ignored his pleas for help.  During this time, numerous defendants placed him on a paper restriction, under which he was allowed access to one piece of paper at a time.  Braithwaite claims that this restriction prohibited him from reading his Quran, which is part of his Muslim faith.  Braithwaite further claims that defendants Ray, Payne and Brown ignored his inmate complaints about the restriction.

Braithwaite claims that staff next started taking away his hygiene products, and even though Kartman wrote a memo authorizing him to use hygiene products, Ms. Brown, Mutiva Mellen, Payne, Webster, Hagensick, Tierney, Strong Weadge, Castel and others refused to provide him those products.  Braithwaite further claims that defendants Mellen, Scullion, Hoem and Brinkman withheld canteen items he ordered.  It appears that they took these actions in retaliation for him filing inmate complaints and threatening to file a lawsuit.

Finally, Braithwaite alleges that Nurses McGeough, Doll, Zenz, Rodger, Wehrle and Health Service Unit ("HSU") managers Kinyon and Adams refused to treat him for his self-harm wounds and refused to have him see a doctor when in March of 2021, he went on a hunger strike.

**Lawsuit 3:**  Braithwaite alleges that staff started making fun of his penis size and watching him shower and masturbate.  When he complained to Mutiva, Castel, Duve, Kimbler, Strong, Mellen, Tierney, Weadge, Bresee, Scullion, Ms. Brown, Hagensick, Payne, Webster and Leffle, they responded that they did not believe him.

**Lawsuit 4:**  Braithwaite claims that defendants Dr. Schween and Kimbler retaliated against him by charging him in a conduct report with sexual misconduct because he was masturbating under a cover in his cell or with his cell window covered.  Braithwaite further claims that after he masturbated under a cover and soiled his sheets, he was unable to get new sheets for about four months.  Finally, Braithwaite claims that staff told him to masturbate standing by the door of his cell, which is uncomfortable because he has back problems.

**Lawsuit 5:**  Braithwaite claims that he has a privacy right to have nurses, as opposed

to correctional officers, dispense his medications, but he receives his psychotropic medicine from staff, who harass him about his mental health condition. Braithwaite says that the following defendants have handled his medication distribution in violation of HIPAA and his Eighth and First Amendment rights: Mann, Payne, Webster, Reynold, Weadge, Colin, Miller, Hagensick, Strong, Duve, Kimbler, Castel, Wilkinson, Salman, Evans, Bird, Hohn, Waldera, Paris, Zimmer, Fishnick, Schneider and Jones.

**Lawsuit 6:** Braithwaite claims that on February 19, 2021, he told non-defendant officer Johnston that he needed his inhaler, but Johnston never returned, and Braithwaite had serious breathing problems that day. He reported his breathing issues to defendants Castel, Winger, Kimbler and Mellen, but he went several hours without his inhaler. Eventually Braithwaite fell out of his bunk and had to be transported to the hospital.

This court may apply Braithwaite's filing fee to only *one* of the lawsuits identified above. *George v. Braithwaite*, 507 F.3d 605, 607 (7th Cir. 2007). Braithwaite will have to choose which lawsuit that is, and once he chooses, that lawsuit will be the only lawsuit assigned to this case number. As for the other lawsuits, Braithwaite must make a choice. One option is to pursue the other lawsuits separately, but if Braithwaite chooses this option, he will be required to pay a separate filing fee for *each* lawsuit he chooses to pursue. In addition, he may receive a "strike" under 28 U.S.C. § 1915(g) for any lawsuit that is dismissed for failure to state a claim upon which relief may be granted or for one of the other reasons listed in § 1915(g). As Braithwaite may be aware, once a prisoner receives three strikes, he is not able to proceed in new cases without first paying the full filing fee except in narrow circumstances. 28 U.S.C. § 1915(g).

Alternatively, Braithwaite may choose to dismiss his other lawsuits voluntarily. If he chooses that route, he will not owe an additional filing fee or face a strike for the lawsuits he dismisses. Any lawsuit dismissed voluntarily would be dismissed without prejudice, which means that Braithwaite would be able to bring it at another time, so long as he files it before the statute of limitations has run.

Because it is not clear at this time which lawsuit Braithwaite will pursue under this case number, the court has not evaluated his allegations for screening as required by §§ 1915(e)(2), 1915A, or determined whether Braithwaite has provided fair notice of his claims, as required by Rule 8 of the Federal Rules of Civil Procedure.  Once Braithwaite identifies the suit he wants to continue to litigate under this case number, the court will screen his complaint.  Because Braithwaite faces filing fees and potential strikes for each additional lawsuit he pursues, he should carefully consider the merits and relative importance of each of his potential lawsuits when choosing which of them he wishes to pursue.

If Braithwaite disagrees with the way the court has grouped his claims or if he believes the list above left out claims he intended to assert or included claims he did not intend to assert, he may raise those objections, but he must still comply with this order and choose which of the lawsuits he wishes to pursue.  If he fails to do so, the court will dismiss all his claims for his failure to prosecute them.

Finally, the court is denying without prejudice Braithwaite's motions related to the preservation of certain video footage.  In his motions, Braithwaite asks for court intervention to ensure that his institution retains certain video footage related to his claims. However, Braithwaite should be able to use the procedures available to him at WSPF to request preservation of video footage, and he has not shown those procedures to be ineffective.  Moreover, it is not yet clear what claims Braithwaite will be pursuing in this lawsuit, and, therefore, it is unclear what video footage should be preserved.  Therefore, the court is denying these motions, but the denial will be without prejudice to his renewing these motions, should (1) he choose to pursue a lawsuit involving claims that will include

video footage evidence, and (2) he shows that WSPF officials have refused his properly submitted request to preserve such footage.

ORDER

IT IS ORDERED that:

1. Plaintiff Joshua Braithwaite has until **March 31, 2022**, to identify for the court which numbered lawsuit identified above he wishes to proceed with under the case number assigned to this case. Braithwaite may pick one of these lawsuits to proceed under Case No. 21-cv-425-wmc.

2. Also by **March 31**, Braithwaite must notify the court whether he wishes to pursue other lawsuits under separate case numbers, or whether he will dismiss them voluntarily.

3. If Braithwaite dismisses his other lawsuits voluntarily, he will not owe a filing fee and he will be permitted to refile the dismissed claims later, so long as he complies with the applicable statute of limitations.

4. If Braithwaite chooses to pursue his other lawsuits under separate case numbers, he will owe a separate filing fee.

5. Once Braithwaite chooses which lawsuits he wants to pursue, the court will screen the claims pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. If Braithwaite fails to respond to this order by **March 31**, the court will dismiss all of his claims without prejudice for failure to prosecute.

6. Plaintiff's motions regarding preservation of video footage (dkt. ##8, 10) are DENIED without prejudice.

Entered this 10th day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge